

**FILED & ENTERED**

**FEB 12 2018**

**CLERK U.S. BANKRUPTCY COURT
Central District of California
BY** bakchell **DEPUTY CLERK**

<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>ROSA M. LICEA,<br><br>　　　　　　Debtor.<br><br>ROSA M. LICEA,<br><br>　　　　　　Petitioner,<br>　vs.<br><br>2042 TOWN SQUARE WEST, LLC; 8454 STELLER DRIVE, LLC<br><br>　　　　　　Respondents. | Case No. 2:13-bk-34043 RK<br><br>Chapter 7<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING CONTESTED MATTER OF DEBTOR'S MOTION TO HOLD CREDITORS 2042 TOWN SQUARE WEST, LLC, AND 8454 STELLER DRIVE, LLC, IN CONTEMPT OF COURT FOR VIOLATION OF THE AUTOMATIC STAY AND DISCHARGE INJUNCTION** |

　　　This contested matter of the motion of Debtor Rosa M. Licea ("Debtor") for an order to show cause why Creditors 2042 Town Square West LLC and 8454 Steller Drive LLC (collectively referred to as Landlord) should not be held in contempt of court for violation of the automatic stay and discharge injunctions came on for trial before the undersigned United States Bankruptcy Judge on June 15, 2017 and September 12, 2017.  Debtor, who is a self-represented party, appeared for herself.  Gary D. Fidler, of the law firm of Greene, Fidler & Chaplan, LLP, appeared for Landlord.   The matter was

taken under submission on February 2, 2018 after the deadline for the parties to submit proposed findings of fact and conclusions of law and objections thereto had expired. The court notes that the parties submitted exhibits in support of their respective proposed findings of fact and conclusions of law different from what they offered at trial.  The court will consider these additional exhibits as part of the evidentiary record because pursuant to the court's post-trial scheduling order filed and entered on September 12, 2017, the parties had the opportunity to object to each other's proposed findings of fact and conclusions of law, including any attached exhibits, and no such objections were interposed and because as discussed below, the court in referring to the exhibits in the findings of fact below notes that many of them are copies of pleadings and other documents filed with the court in this case, for which the court could take judicial notice pursuant to Federal Rule of Evidence 201, and one exhibit, the lease itself, was offered by both parties.  Landlord's exhibits were attached to the amended proposed findings of fact and conclusions of law, which were not objected to by Debtor.

After consideration of the testimony of the witnesses and evidence received at trial, the oral and written arguments of the parties, the court hereby issues the following Findings of Fact and Conclusions of Law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014 and Federal Rule of Civil Procedure 52.

**FINDINGS OF FACT**

1.     Debtor filed her voluntary petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C., on September 30, 2013, Case No. 2:13-bk-34043 RK Chapter 7, in the United States Bankruptcy Court, Central District of California, Electronic Case Filing Number ("ECF") 1.

2.     Prior to filing her Chapter 7 bankruptcy petition, Debtor operated a business known as Images Hair Design (Standard Multi-Tenant Shopping Center Lease – Net dated May 28, 2013, Debtor's Trial Exhibit 18 and Landlord's Exhibit 2; Testimony of Rosa Licea at trial).

2

3. Debtor conducted her business in Palmdale, California, at a shopping center owned by 2042 TOWN SQUARE WEST, LLC and 8454 STELLER DRIVE, LLC (hereinafter referred to as Landlord) (Standard Multi-Tenant Shopping Center Lease – Net dated May 28, 2013, Debtor's Trial Exhibit 18 and Landlord's Exhibit 2; Testimony of Rosa Licea at trial).

4. Prior to the filing of Debtor's bankruptcy case, Debtor and Landlord entered into a commercial lease for the premises owned by Landlord at 2140 East Palmdale Boulevard, Unit M, Palmdale, County of Los Angeles, California 93550 (the Premises) (Standard Multi-Tenant Shopping Center Lease — Net dated May 28, 2013, Debtor's Trial Exhibit 18 and Landlord's Exhibit 2; Testimony of Rosa Licea at trial).

5. The written Lease for the Premises was for a term of five (5) years beginning on June 1, 2013, and ending on May 31, 2018 (Standard Multi-Tenant Shopping Center Lease — Net dated May 28, 2013, Debtor's Trial Exhibit 18 and Landlord's Exhibit 2; Testimony of Rosa Licea at trial).

6. Debtor did not list or mention Landlord on Schedule B-Personal Property (No. 3) of her bankruptcy petition, which requires a bankruptcy debtor to list all security deposits with a landlord (Bankruptcy Petition, ECF 1, Schedule B-Personal Property, Landlord's Exhibit 3).

7. Debtor did not list or mention Landlord on Schedule G-Executory Contracts and Unexpired Leases of her Bankruptcy Petition, which requires a bankruptcy debtor to identify all executory contracts and unexpired leases (Bankruptcy Petition, ECF 1, Schedule G, Landlord's Exhibit 4).

8. Debtor did not list Landlord in the Creditors' Mailing Matrix (Bankruptcy Petition, ECF 1, Creditors' Mailing Matrix, Landlord's Exhibit 5).

9. Debtor did not list or mention her commercial lease with Landlord anywhere in her Chapter 7 bankruptcy petition (Bankruptcy Petition, ECF 1; Testimony of Rosa Licea at trial).

3

10. The Chapter 7 Trustee filed a Report of No Distribution on October 30, 2013 (Bankruptcy Case Docket, Landlord's Exhibit 1), and neither Debtor nor the Trustee assumed the commercial lease of the Premises. *Id.; see also,* 11 U.S.C. § 365(d)(4)(nonresidential real property leases must be assumed in a Chapter 7 bankruptcy case within 120 days of the order for relief, or the petition date, which would have been on or about January 28, 2014).

11. Debtor never advised or informed Landlord of her bankruptcy case prior to the filing of Landlord's state court action. (Testimony of Rosa Licea at trial).

12. Debtor paid all pre-petition rent payments to Landlord. (Testimony of Rosa Licea at trial; fact admitted by Landlord).

13. Debtor continued to operate her business on the Premises and paid all rent payments during the pendency of her bankruptcy case. (Testimony of Rosa Licea at trial; fact admitted by Landlord).

14. Debtor's discharge was entered on January 13, 2014 (Bankruptcy Case Docket, Docket Entry Number 12, Landlord's Exhibit 1).

15. Debtor continued to operate her business on the Premises and paid rent payments to Landlord for almost two years after discharge (Testimony of Rosa Licea at trial; fact admitted by Landlord).

16. Debtor breached her lease contract with Landlord when she defaulted on her rent payment obligations beginning November 1, 2015. (Testimony of Rosa Licea at trial confirming that she did not pay rent to Landlord after October 31, 2015).

17. Debtor breached the lease contract with Landlord by vacating the subject Premises on October 24, 2015 prior to the lease termination date of May 31, 2018. (Testimony of Rosa Licea at trial that she vacated the subject leasehold Premises prior to the lease termination date of May 31, 2018).

18. On November 25, 2015, Landlord filed a state court action against Debtor for breach of lease (Fact admitted by Rosa Licea; State Court Summons, Landlord's Exhibit 6).

19. At the time Landlord filed its state court action against Debtor, it had no information or knowledge that Debtor had filed a Chapter 7 bankruptcy petition on September 30, 2013, and was granted a discharge on January 13, 2014 (Testimony of Rosa Licea at trial; fact admitted by Landlord).

20. Landlord first became aware of Debtor's bankruptcy petition when she filed a motion to reopen her bankruptcy case on December 28, 2016 (Testimony of Rosa Licea at trial; fact admitted by Landlord).

## CONCLUSIONS OF LAW

1. This court has jurisdiction over Debtor's motion for contempt for alleged violations of the automatic stay and the discharge injunction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (I) and (O).

2. Debtor as the party seeking contempt sanctions has the burden of proving by clear and convincing evidence that the contemnors violated a specific and definite order of the court. *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002). The movant must prove that the creditor knew the discharge injunction was applicable and intended the actions which violated the injunction. *Id.* (citations omitted).

3. Debtor has not met her burden of proving by clear and convincing evidence that Landlord willfully violated the automatic stay because there is no evidence that Landlord took any action to enforce the lease until after Debtor's discharge was entered. Debtor's discharge was entered on January 13, 2014, at which time the automatic stay terminated by operation of law pursuant to 11 U.S.C. 362(c) (2)(C). The acts that Debtor complains of took place when Landlord filed its lawsuit against Debtor in state court for breach of lease and common counts on November 25, 2015. Because the automatic

stay had terminated by then, Landlord's actions in its lawsuit could not have violated the automatic stay.

    4. Debtor has not met her burden of proving by clear and convincing evidence that Landlord willfully violated the discharge injunction because while the lease with Landlord was deemed rejected by operation of law when it was not timely assumed after Debtor filed her bankruptcy case, rejection of the lease was not a termination of the lease, but only a breach by the Debtor, and the Landlord was within its rights under state law to enforce the lease as it did by filing a lawsuit to collect lost rental income from Debtor's postpetition, postdischarge breach of the lease. 11 U.S.C. § 365(g)(1)(rejection of an unexpired lease generally constitutes a breach); *McLaughlin v. Walnut Properties, Inc.,* 119 Cal.App.4th 293, 298-301 (2004), *citing inter alia, In re Austin Development Co.,* 19 F.3d 1077 (5th Cir. 1994), *In re Locke,* 180 B.R. 245 (Bankr. C.D. Cal. 1995) and California Civil Code § 1951.2(a)(1)-(3) and (c)(1); *see also, In re Onecast Media, Inc.,* 439 F.3d 558, 563 (9th Cir. 2006).

    5. While there is a cap on a landlord's lost rental income damages (i.e., for future rent) under 11 U.S.C. § 502(b)(6) from a prepetition termination of a lease, *see, In re Kupfer,* 852 F.3d 853, 855-858 (9th Cir. 2016), or from "rejection" of the lease by a failure to assume the lease in the bankruptcy case under 11 U.S.C. §§ 365(g)(1) and 502(g)(1), *see also, In re El Toro Materials Co., Inc.,* 504 F.3d 978, 979-981 (9th Cir. 2007), here, the damages sought by Landlord did not occur from the breach in the deemed rejection of the lease under 11 U.S.C. § 365(g) when the trustee in this Chapter 7 bankruptcy case did not timely assume the nonresidential commercial lease in this bankruptcy case, but from a separate breach of the lease by Debtor which occurred postpetition and postdischarge when she failed to pay rent and terminated the lease by vacating the premises before the lease term ended. *In re El Toro Materials Co., Inc.,* 504 F.3d at 981 ("The cap applies to damages 'resulting from' the rejection of the lease. 11 U.S.C. § 502(b)(6).").

6

6. As stated in *El Toro Materials Co., Inc.,* the test for determining whether a claim of a Landlord for breach is capped or not is as follows: "A simple test reveals whether the damages result from the rejection of the lease: Assuming all other conditions remain constant, would the landlord have the same claim against the tenant if the tenant were to assume the lease rather than rejecting it?" *Id.* at 981. Here, there were no damages from the deemed breach of the lease on "rejection" of the lease when the lease was not timely assumed in Debtor's bankruptcy case by the Chapter 7 trustee or Debtor in January 2014 because Debtor was continuing to pay rent throughout the pendency of the bankruptcy case through discharge and beyond. The damages occurred upon Debtor's subsequent breach of the lease when she stopped paying rent in November 2015 and vacated the premises before the lease term ended in 2018 and not upon the rejection of the lease when it was not timely assumed in January 2014. Thus, Landlord is not limited by any statutory cap under 11 U.S.C. § 502(b)(6) in seeking damages for future rent under the lease in its state court lawsuit, which means that there is no violation of the discharge injunction in seeking damages beyond the statutory cap.

7. Citing *In re Johnson,* 460 B.R. 328, 328-330 (Bankr. S.D. Fla. 2011), Landlord argues that the circumstances here indicate that Debtor and Landlord may be deemed to have entered into a postpetition agreement to assume the lease. The facts of this case fit Landlord's argument to deem conduct of Debtor to constitute a postpetition agreement to assume the lease in that that Debtor acted consistently with a postpetition agreement to assume the lease by continuing to make rent payments accepted by Landlord during the pendency of the bankruptcy case and after discharge was entered, by not listing Landlord as a creditor or the lease on the bankruptcy schedules in this case, and by not providing Landlord with notice of the bankruptcy case. During her trial testimony, Debtor said she wanted to maintain the lease and deliberately chose not to notify Landlord of the bankruptcy case. The evidence is undisputed that Landlord had no knowledge of the bankruptcy case while this bankruptcy case was pending until after her discharge was

7

entered in 2014 when Debtor subsequently breached the lease in 2015 by not paying rent as it became due and vacating the leased premises before the lease term ended. Under these circumstances, arguably, the court could determine that Debtor effectively assumed the lease postpetition, postdischarge to be fully obligated under the lease. The court declines to adopt this argument because it seems too artificial a construct to determine that the parties, Debtor as tenant and Landlord, have entered into a new postpetition agreement to assume the lease since there was no knowledge of Landlord that the lease had been rejected and that it is simpler and more straightforward just to determine that the lease was breached, not terminated, upon rejection and that Landlord had the right to enforce the breached, but unterminated, lease, which remains still in existence, and could seek damages for a future and separate breach of the lease, which would not violate the discharge injunction as actually analyzed by the court in *In re Johnson*. *In re Johnson,* 460 B.R. at 331-333 (holding that the discharge injunction did not bar the landlord from seeking damages from a separate breach of lease by the debtor/tenant for rent nonpayment subsequent to rejection of the lease by nonassumption); *see also, In re Onecast Media, Inc.,* 439 F.3d at 563, *citing and quoting,* 3 Resnick and Sommer, *Collier on Bankruptcy,* ¶ 365.09[1] (Rev. 15th ed. 2005)("Rejection does not . . . affect the parties' substantive rights under the contract or lease, such as the amount owing or a measure of damages for breach and does not waive any defenses to the contract.").

    8. Citing *In re Humbert,* 567 B.R. 512 (Bankr. N.D. Ohio 2017), Debtor argues that her debts owed to Landlord are dischargeable prepetition debts because any debts owed a landlord on an unexpired prepetition lease deemed rejected pursuant to 11 U.S.C. § 365(d)(1), including any postpetition rent arrearages, are deemed prepetition debts pursuant to 11 U.S.C. § 365(g)(1). *In re Humbert,* 567 B.R. at 515, *citing, In re Miller,* 282 F.3d 874, 876-877 (6th Cir. 2001). Citing *In re Beezley,* 994 F.2d 1433 (9th Cir. 1993) and *In re Alexander,* 300 B.R. 650 (Bankr. E.D. Va. 2003), Debtor argues that even

though she did not list Landlord on her bankruptcy petition and schedules, any debt owed to Landlord on the prepetition lease, even if unscheduled, was discharged in her "no asset, no bar date" Chapter 7 bankruptcy case. While these authorities do support Debtor's arguments, especially *In re Humbert,* the court does not find her arguments to be persuasive. These authorities, particularly *In re Humbert,* do not take into account the analysis of the case law in the Ninth Circuit discussed above, such as *El Toro Materials Co.,* that distinguish between claims for damages that resulted from rejection of a lease and those that do not result from rejection. This distinction is not considered in the "out of circuit" case law (i.e., not in the Ninth Circuit, where this court is located) relied upon by Debtor, including *In re Humbert* from the Southern District of Ohio and *In re Miller* from the Sixth Circuit. This court has to follow the case authority from the Ninth Circuit which is controlling, whereas the case law from other circuits has only persuasive value.

9. The court in *In re Humbert* holds, following Sixth Circuit case law in *In re Miller* that all damages from a rejected prepetition lease are prepetition debts subject to the statutory cap of 11 U.S.C. § 502(b)(6) whereas the case law in the Ninth Circuit is that only damages "resulting from" the rejection of the lease are subject to the cap. *In re Humbert,* 567 B.R. at 515-519; *In re El Toro Materials Co., Inc.,* 504 F.3d at 980; *see also, In re Johnson,* 460 B.R. at 331-333. Perhaps that the damages here are similar in kind in what was discussed in *In re Kupfer,* 852 F.2d at 857-858 and *In re El Toro Materials, Co., Inc.,* 504 F.3d at 981-982, i.e., lost rent, rent-like payments or other damages directly related from a tenant's failure to complete a lease term, may make this a close case, given the apparent division in the case law discussed above, but the test here in the Ninth Circuit is as stated in *El Toro Materials Co.,* whether the cap applies because the damages "resulted from" the rejection of the lease. 504 F.3d at 980. Here they did not. Because Landlord's damages from Debtor's subsequent breach of the lease are not "resulting from" the rejection of the lease, they are not deemed to be prepetition debts, which would make them subject to the statutory cap of 11 U.S.C. §

9

502(b)(6) and to the discharge, and it is not a violation of the discharge injunction for Landlord to institute a lawsuit in state court to seek such damages. *See also, In re Johnson,* 460 B.R. at 331-333 (interpreting Florida law, stating that after rejection of the lease, [t]he lease continues in force. If there is a future breach of the lease, the resulting claim does not arise from the rejection of the lease but from the tenant's subsequent default, and the lease is then subject to enforcement under applicable law.); *McLaughlin v. Walnut Properties, Inc.,* 119 Cal.App.4th at 298-303 (under California law, landlord may seek damages for postrejection breaches of lease after rejection of lease in bankruptcy).

Accordingly, for the foregoing reasons, the court should deny Debtor's motion to hold Landlord in contempt of court for alleged violations of the automatic stay and the discharge injunction with prejudice. A separate final order is being entered concurrently herewith.

IT IS SO ORDERED.

###

Date: February 12, 2018

Robert Kwan
United States Bankruptcy Judge